

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 04-CV-80665 Dimitrouleas/Torres

TODD AUGENBAUM,

        Plaintiff,

v.

ROBERT GENOVESE, BG CAPITAL       **AMENDED COMPLAINT**
GROUP LTD, and SPECTRUM SCIENCES
AND SOFTWARE HOLDINGS CORP.,       JURY TRIAL DEMANDED

        Defendants.
_____/

Plaintiff, by his attorneys, alleges, as follows:

### INTRODUCTION

1. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. § 78p(b)] ("Section 16(b)") to obtain disgorgement of short-swing insider trading profits realized by defendants Robert Genovese and BG Capital Group Ltd. (collectively referred to as the "Defendants"), who, at all relevant times, were statutory insiders of Spectrum Sciences and Software Holdings Corp. ("Spectrum" or the "Company.")

2. Robert Genovese ("Genovese") acted as an officer and director of the Company while he was President and sole stockholder of, and represented the interests of, BG Capital. Therefore, Genovese and BG Capital were statutory insiders of Spectrum, and, as such, are presumed to have had access to material non-public information concerning Spectrum's operations and future business prospects. Section 16(b) seeks to prevent market manipulation by requiring such insiders to disgorge

any profits they earn through short-swing insider trading (*i.e.*, purchases and sales within a six month period). Section 16(b) is a strict liability claim concerned with the potential for the misuse of inside information rather than the actual misuse of such information.

## PARTIES

3. Plaintiff Todd Augenbaum resides in the State of New York and is a shareholder of Spectrum Sciences and Software Holdings Corp.

4. Defendant Robert Genovese resides in the State of Florida. Genovese's business address is 2424 North Federal Highway, Boca Raton, Florida 33431.

5. Defendant BG Capital Group ("BG Capital"), a Bahamian Corporation, maintains its principal offices at Slot # 2000 A.P. 59233, Nassau, Bahamas. Robert Genovese is the President and sole stockholder of BG Capital.

6. Defendant Spectrum Sciences and Software Holdings Corp., a corporation formed under the laws of the State of Delaware, maintains its principal offices at 91 Hill Avenue NW, Fort Walton Beach, Florida 32548. The Company's common stock is registered with the SEC pursuant to Section 12 of the Exchange Act and its common stock ("Common Stock") trades on the Over the Counter Bulletin Board under the symbol SPSC. This action is brought by plaintiff in order to obtain a recovery for the Company.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Venue is properly laid in this District because Spectrum is located in this District.

**CLAIM FOR RELIEF**

**Genovese and BG Capital Were Statutory Insiders
Within the Meaning of Section 16(b)**

8. Although Genovese was not formally named as an officer or director of Spectrum, he performed functions and had responsibilities with respect to Spectrum that were similar to the functions and responsibilities of Spectrum's officers or directors. Thus, he was an officer or director of Spectrum within the meaning of Section 3(a)(7) of the Exchange Act and subject to Section 16(b). In a letter dated March 19, 2004 to Spectrum's Board of Directors, Donald R. Myrick ("Myrick"), Spectrum's founder, described Genovese's position at Spectrum:

(a) "For over a year, Spectrum has been operated under the direction of Mr. Genovese . . .";

(b) Genovese "calls all of the shots" and "controls the direction and actions of Spectrum"; and

(c) Genovese was granted a "sweetheart deal" with respect to his salary while management salaries were being reduced.

9. At all relevant times, Genovese, who was President and sole stockholder of BG Capital, served as BG Capital's representative and deputy while he acted as an officer or director, making BG Capital an officer or director of Spectrum because:

(a) as the sole stockholder of BG Capital, Genovese had sole voting and dispositive power over shares of common stock owned by BG Capital;

(b) as President of BG Capital, Genovese had ultimate authority over the investment decisions of BG Capital;

(c) BG Capital benefited from or intended to benefit from Genovese's association with the Company.

3

10. In addition to Genovese's control over the Company, Genovese owned options to acquire a majority of the Company's Common Stock. On or about March 11, 2004, Genovese entered into an agreement to provide consulting services to the Company (the "Consulting Agreement"). As part of that Consulting Agreement, Genovese was granted options to purchase nine million shares of common stock at an exercise price of the lesser of $1.65 or the fair market value of the shares at the time of exercise. According to a Form 10-Q filed with the SEC on December 3, 2003, on November 12, 2003, Spectrum had 18,851,000 shares of Common Stock outstanding.

11. Pursuant to the Consulting Agreement, Genovese agreed, among other things, to perform the following functions on behalf of the Company:

(a) "develop an in-depth familiarization with the Company's business objectives";

(b) comment on the Company's "corporate development" including such factors as "position in competitive environment," "financial performances," "strategies," and "operational viability"; and

(c) other planning and development services, as requested and instructed by the Company.

12. In a subsequent Consulting Agreement entered into between Genovese, BG Capital, Spectrum, and Endeavor Capital, another company controlled by Genovese, dated October 1, 2004 (the "October 1 Consulting Agreement"), Genovese acknowledged that "during the course of his relationship with Spectrum, he has obtained and may obtain in the future 'Confidential Information,'" which was defined as "information concerning Spectrum which . . . has not been publicly disclosed by Spectrum, is not a matter of common knowledge in the industry, including, but

4

not limited to, certain information relating to the business plans, trade practices, finances, accounting methods, methods of operations, trade secrets, marketing plans or programs, forecasts, statistics relating to markets, contracts, customers, compensation arrangements, and business opportunities."

13.     In a Form 8-K filed with the SEC on March 12, 2004, the Company disclosed that in December 2002, the board of directors of the Company's principal operating subsidiary, Spectrum Sciences and Software, Inc. (the "Operating Company") was authorized to pay up to approximately $100,000 per month for corporate expenses on Genovese's personal American Express account. Furthermore, the Operating Company was responsible to Genovese for other expenses incurred by him in connection with management assistance which as of February 27, 2004, purportedly totaled $652,653.47.

14.     In an April 29, 2004 article examining Genovese's activities with respect to Spectrum, The New York Times reported that Genovese was in the process of buying the Company's real estate for the amount of mortgage debt, offering in return to classify some of the money owed him as long-term rather than short-term debt. In addition, in return for canceling $200,000 in debt, he was given one million shares of convertible preferred stock, whose terms were not disclosed.

15.     According to The New York Times, Genovese sponsored promotions of Spectrum even though the Company was failing financially. In its April 29, 2004 article "Small Company is Foundering; Stock is Soaring," the Times reported that Genovese caused Endeavor Capital to pay almost $1 million to send out an "enthusiastic endorsement" of Spectrum's stock to investors, despite the fact that Spectrum's two other directors had earlier stated that the Company "is not viable on its own merit" and lacks "adequate capital resources to pay this debt."

**Defendants Purchase Spectrum Common Stock**

16.     According to two Schedule 13D's filed on August 3, 2004 and October 4, 2004 by Defendants, Defendants purchased approximately 3,000,000 shares of Spectrum Common Stock in the open market at prices ranging from $0.64 to $1.53 per share from June through September.

**Defendants Sell and Profit from Trading Spectrum Common Stock**

17.     Coinciding with the Company's relationship with Defendants, Spectrum regularly released positive announcements to the investing public regarding its results of operations and business prospects, to wit:

- December 10, 2003 - record 3rd quarter sales of $3,287,609, and record sales for the first nine months of 2003 to $10,003,999;

- January 7, 2004 - award of a multi-year contract from the Department of Defense, totaling over $3.7 million;

- January 21, 2004 - completion of a significant debt restructuring with its principal lender;

- January 23, 2004 - SafeRange Licensing Agreement with German Government for $150,000;

- February 5, 2004 - New Critical Contracts Totaling $265,000 in Direct Support of New Global War on Terrorism;

- February 24, 2004 - award of a Department of Defense contract to complete a combat-critical facility;

- March 3, 2004 - awarded a contract to provide support for the United States Air Force's Air Armament Center on critical development projects; and

- March 30, 2004 - United States Navy Selects Spectrum Sciences for Crucial International Contract.

18.     At the same time Spectrum's stock was hitting new highs on an almost daily basis, as follows:

- January 28, 2004, $2.030 per share;

- February 25, 2004, $2.290 per share;

6

- March 10, 2004, $2.64 per share;

- April 15, 2004, $3.06 per share; and

- April 28, 2004, $3.99 per share.

19. During that time, within six months of the purchases alleged above, Defendants are believed to have sold millions of shares of Common Stock at prices in excess of their purchase price yielding millions of dollars of profits recoverable under Section 16(b).

20. In the August 3, 2004 Schedule 13D, Defendants reported that during March and April they had exercised options for in excess of 20,000,000 shares. In that same Schedule 13D, the Defendants reported the sale of only 81,500 shares of Common Stock in the 60 day period preceding the date of filing the August 3, 2004 Schedule 13D, and that as of July 22, 2004, they beneficially owned only 2,305,001 shares of Spectrum Common Stock. Therefore, between March 2004 and June 3, 2004, the Defendants disposed of over 17,000,000 shares of Common Stock.

21. During that period, Spectrum Common Stock traded at prices ranging from $1.10 to $4.02 per share, significantly above the purchase prices reported in the August and October Schedule 13D's.

22. On May 25, 2004, the New York Times reported that the Company had stated that through May 21, Genovese had exercised options for 21.2 million shares and that it appears that he sold the shares in the over-the-counter bulletin board market as rapidly as he acquired them. Volume in April alone came to more than 116 million shares, and more than 35 million have traded in May.

23. Defendants are believed to have additional liability under Section 16(b) based upon additional acquisitions of Company common stock while a statutory insider of Spectrum. For example, in its Form 10-K the Company further disclosed that in the first quarter of 2004 that it intended to enter into a subscription agreement with BG Capital pursuant to which the Company

7

would sell 1,000,000 shares of Company's Series A 10% convertible preferred stock in exchange for BG Capital's forgiveness of $200,000 of the principal of a $450,000 promissory note payable to BG Capital.  However, the timing of this consummation and timing of that acquisition is not yet known by plaintiff.

## ALLEGATIONS AS TO DEMAND

24. On May 3, 2004, plaintiff, acting through his counsel, wrote to the Board of Directors of Spectrum demanding that it bring an action against the Defendants based on the facts alleged above.  The Company has failed to recover nor has it instituted a lawsuit to recover the short-swing profits alleged herein.

## BASIS FOR INFORMATION AND BELIEF

25. The basis for plaintiff's information and belief to the extent not specified above is based upon a review of documents filed with the SEC relating to Spectrum, including the following: (i) Form 10-Q filed by Spectrum with the SEC on or about May 24, 2004; (ii) Form 8-K filed by Spectrum with the SEC on or about April 20, 2004; (iii) Form 10-K filed by Spectrum with the SEC on or about April 14, 2004; (iv) Form 8-K filed by Spectrum with the SEC on or about March 30, 2004; (v) Form 8-K filed by the Company with the SEC on or about March 12, 2004; (vi) Schedule 13D dated August 3, 2004; and (vii) Schedule 13D dated October 4, 2004.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against the Defendants in an amount to be determined at trial, plus attorneys' fees, pre-judgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

DATED this 18th day of October, 2004     **LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
197 South Federal Highway
Suite 200
Boca Raton, FL 33432
(561) 750-3000 Telephone
(561) 750-3364 Facsimile


By:    */s/ Robert J. Robbins*
       Paul J. Geller
       Florida Bar No. 0984795
       pgeller@lerachlaw.com
       David J. George
       Florida Bar No. 0898570
       dgeorge@lerachlaw.com
       Robert J. Robbins
       Florida Bar No. 0572233
       rrobbins@lerachlaw.com


ABRAHAM, FRUCHTER & TWERSKY LLP
Jack G. Fruchter*
Mitchell M.Z. Twersky*
Abraham, Fruchter & Twersky LLP
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

*Counsel for Plaintiff*

*Admitted Pro Hac Vice

9

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that a true and correct copy of the foregoing was served via facsimile and U.S. Mail this 18th day of October, 2004, to the following:

Lori, Smith-Lalla
SQUIRE, SANDERS & DEMPSEY, L.L.P.
One Brickell Square
801 Brickell Avenue, PHII
Miami, Florida  33131-2317
Tel:  (305) 577-8700
Fax:  (305) 358-1425

James P. Murphy
James P. Wehner
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20044-0407
Tel:     (202) 626-6600
Fax:     (202) 626-6780

*Counsel for Spectrum Sciences and*
 *Software Holding Corp.*

Richard C. Seavey
ZUCKERMAN SPAEDER LLP
201 South Biscayne Boulevard
Miami, Florida  33131
Tel:     (305) 358-5000
Fax:     (305) 579-9749

Graeme W. Bush
R. Miles Clark
ZUCKERMAN SPAEDER LLP
1201 Connecticut Avenue, NW
Washington, DC  20036
Tel:     (202) 778-1800
Fax:     (202) 822-8106

*Counsel for Defendants Endeavor Capital*
 *Group, LLC and BG Capital Group Ltd.*

              */s/ Robert J. Robbins*
              Robert J. Robbins